IN RE DODGE COUNTY FARM DRAINAGE DISTRICT No. 72:
SCHAUMBERG and wife, Appellants, v. DODGE COUNTY
FARM DRAINAGE DISTRICT No. 72, Respondent.

*No. 46. Argued January 4, 1971.—Decided February 2, 1971.*
(Also reported in 183 N. W. 2d 52.)

1

For the appellants there was a brief by *Lueck & Skup-niewitz* of Beaver Dam, and oral argument by *A. W. Lueck.*

For the respondent there was a brief by *Allan & Storck* of Mayville, and oral argument by *Robert E. Storck.*

HANLEY, J.  The following issues are presented on appeal:

(1) Was the Dodge County Farm Drainage District properly organized;

(2) At the February 11, 1970, hearing, did the trial court properly dismiss as untimely the plaintiffs' objections to the organization of the drainage district; and

(3) Is the amount of benefits assessed against plaintiffs supported by the evidence?

*Organization of Dodge County Farm Drainage District No. 72.*

In order to evaluate plaintiffs' argument that the drainage district was improperly organized, it is necessary to review the steps taken to bring it into existence;

(1) In March of 1969, pursuant to sec. 88.28, Stats., a petition requesting that the drainage district be organized was filed with the trial court;

(2) Pursuant to sec. 88.29, Stats., the trial court referred the petition to the Dodge County Drainage Board and ordered the board to make a report thereon;

(3) The board held hearings, pursuant to sec. 88.32, Stats., on the petition, as required by sec. 88.29, and then filed its preliminary report with the court recommending that the court order organization of the proposed drainage district;

(4) Pursuant to sec. 88.34, Stats., the court set August 20, 1969, as the date for hearing on the board's report and caused notice to be given to all interested persons that such hearing would be held on August 20, 1969;

(5) Pursuant to sec. 88.07 (2), Stats., the plaintiffs filed a petition opposing the organization of the proposed drainage district on the grounds that (a) their farm already had an adequate drainage system and (b) the petition was invalid because it did not have the requisite number of signatures; and

(6) At the hearing on August 20th, the trial court heard testimony from both the proponents of the drainage district as well as the objections of the plaintiffs. The court then found that all the conditions required by sec. 88.34 (3) (a) through (f), were satisfied.

Sec. 88.34 (3) (a) through (f), Stats., provides as follows:

"(3) The court shall make an order organizing the drainage district and direct the board to proceed with

all convenient speed if on such hearing the court finds each of the following facts:

"(a) That the petition or petitions have sufficient signers.

"(b) That the lands described in the petitions together with any additional lands recommended by the board for drainage will be improved by the proposed work.

"(c) That the public health or public welfare will be promoted thereby.

"(d) That the cost of construction will not exceed 75% of the benefits to be derived from the proposed work.

"(e) If navigable waters may be affected, that a permit has been obtained under s. 88.31.

"(f) That the proposed work will not materially injure or impair fish habitat or wildlife habitat or scenic beauty or the conservation of natural resources or other public rights or interests."

After hearing competent testimony on all of the points outlined by sec. 88.34 (3), Stats., the court concluded the hearing with these words:

"Now, therefore, it is hereby ordered that Farm Drainage District No. 72, being the Wildcat District in the Town of Hubbard, is hereby organized."

We conclude that Dodge County Farm Drainage District No. 72 was properly organized pursuant to ch. 88, Stats.

### *Were plaintiffs' objections untimely?*

The next hearing on this matter was held February 5, 1970. The purpose of this hearing was to confirm the benefits and damages which had been assessed against various landowners in the district.

At that hearing which was adjourned and reconvened on February 11, 1970, plaintiffs tried to proceed under sec. 88.33 (1), Stats., which provides as follows:

"**Drainage project may be stopped prior to organization of district.** (1) At any time prior to the entry of the

order organizing a drainage district, the owners who represent a majority of the lands described in the petition for drainage or who represent a majority of the lands contained in the report of the drainage board may file with the court a petition requesting that no further proceeding be had and that no further expense chargeable to the proposed drainage district be incurred."

The trial court held that it was too late for plaintiffs to raise any further objections to the creation and existence of the drainage district itself. The court noted that since sec. 88.33 (1), Stats., allows objections only at "any time *prior*" (emphasis supplied) to the entry of the final order declaring the district to be organized, and since that order had already been entered by the court (orally on August 20, 1969, and in writing on January 6, 1970), the court properly concluded that plaintiffs' objections were untimely and not entitled to any further consideration.

The court further concluded that plaintiffs' petition amounted to nothing more than a motion for rehearing; and the statute makes no provision for a rehearing of objections to the organization of the drainage district.

Plaintiffs' response to the trial court's conclusion is that their petition is grounded on fraud in that it states:

"3. Acreage was eliminated from said petition after protest by the owners thereof, without the court being advised of that fact, and this had the effect of reducing the number of signers of the petition below the number required by law."

While there were some changes in boundaries, in each instance the report was amended, keeping the court apprised of these changes. Sec. 88.35 (3), Stats., allows the board to extend or contract the boundaries of the district so as to include or exclude lands.

Plaintiffs have not specifically charged fraud and have not pointed to any specific evidence from which an in-

ference of fraud could be drawn. Therefore, as to this aspect of the appeal, the trial court's ruling was proper.

*Assessment of benefits.*

The next matter disputed by plaintiffs at the February 11, 1970, hearing was the amount of benefits assessed against the plaintiffs. The computation of benefits to a given farmer, as the result of improved drainage, is a very complicated procedure. The procedure was explained in outline form by the expert witness, John Prunuske, the engineer for the drainage board. He informed the court that he followed the procedure required by sec. 88.30, Stats. That section provides that the board's engineer must secure a report from the University of Wisconsin College of Agriculture when the total amount of land in the proposed district exceeds 200 acres. In preparing its report, the College of Agriculture consults soil maps to determine what kind of soil lies beneath each farmer's wetland. The college then determines what the highest and best use of that wetland will be once it has been drained. The college finally computes the benefits which will accrue to each farmer as a result of the fact that he will enjoy an increase in his total number of productive acres.

In accordance with sec. 88.30, Stats., the report of the board's engineer included a report from the College of Agriculture; and the engineer testified that it was an accurate report. Sec. 88.30 (4) provides that ". . . Such reports constitute prima facie evidence of the facts stated therein." The plaintiffs offered no evidence which would overcome this presumption of validity. Their only argument was that the land already had what in their opinion were adequate drainage facilities; and, therefore, no benefits would accrue as a result of this impending drainage project. The board contradicted this

argument by the testimony of its engineer, and the resulting conflict presented a question of opinion evidence for the trier of fact.

Plaintiffs also contend that the record does not contain adequate evidence of the accuracy of their assessment, because the board did not produce at trial the soil maps on which the assessment was in part based. They contend that this unfairly limited the scope of his cross-examination of the board's engineer. Plaintiffs could have subpoenaed, or even made an informal request for, the production of these maps prior to the hearing, but they chose not to do so.

Moreover, the soil type for each assessment was listed in the board's final report to the court; and plaintiffs do not contend that this wetland is not the kind of soil which the board reported it to be. Therefore, production of the soil maps would have been cumulative, and the failure to produce them was in no way prejudicial to the plaintiffs.

Plaintiffs' final argument is that the final report of the board listed them as owners of 160 acres, rather than 156 actually possessed. The error in total acreage did not affect the accuracy of the board's calculation of plaintiffs' assessment because that calculation was based, not on the total acreage owned, but only on the total of wetland acres owned. As to wetland acres, plaintiffs concede that the board's figure is accurate.

We conclude that the testimony given by the expert engineer, John Prunuske, substantiates the finding of the trial court with reference to the assessment against plaintiffs.

Under the familiar rule that findings of a trial judge will be affirmed unless contrary to the great weight and clear preponderance of the evidence, we must affirm the findings of the trial court.

*By the Court.*—Orders affirmed.